# CHURCH OF SCIENTOLOGY OF CALIFORNIA *v.* INTERNAL REVENUE SERVICE

No. 86–472.   Argued October 5, 1987—Decided November 10, 1987

Rehnquist, C. J., delivered the opinion of the Court, in which all other Members joined, except Brennan and Scalia, JJ., who took no part in the consideration or decision of the case.

*Michael Lee Hertzberg* argued the cause for petitioner. With him on the briefs were *Eric M. Lieberman* and *Ellen J. Winner.*

*Deputy Solicitor General Lauber* argued the cause for respondent. With him on the brief were *Solicitor General Fried, Acting Assistant Attorney General Mann,* and *Alan I. Horowitz.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Section 6103 of the Internal Revenue Code, 26 U. S. C. § 6103, lays down a general rule that "returns" and "return information" as defined therein shall be confidential. "Return information" is elaborately defined in § 6103(b)(2); immediately after that definition appears the following proviso, known as the Haskell Amendment:

> "[B]ut such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer."

Petitioner Church of Scientology of California, seeking disclosure under the Freedom of Information Act, contends that

---

*\*David C. Vladeck* and *Alan B. Morrison* filed a brief for Professor John L. Neufeld et al. as *amici curiae* urging reversal.

*John A. Powell, Stephen K. Strong,* and *David F. Stobaugh* filed a brief for the American Civil Liberties Union et al. as *amici curiae.*

the Haskell Amendment excepts from the definition of "return information" all material in the files of the Internal Revenue Service (IRS) which can be redacted to delete those parts which would identify a particular taxpayer. Respondent IRS in opposition argues that the mere redaction of identifying data will not, by virtue of the Haskell Amendment, take the material out of the definition of "return information." We agree with the IRS.

Petitioner filed a request with respondent under the Freedom of Information Act (FOIA), 5 U. S. C. § 552, for the production of numerous documents. Among the materials sought by petitioner were "[c]opies of all information relating to or containing the names of, Scientology, Church of Scientology, any specific Scientology church or entity identified by containing the words Scientology, Hubbard and/or Dianetics in their names, L. Ron Hubbard or Mary Sue Hubbard in the form of written record, correspondence, document, memorandum, form, computor [sic] tape, computor [sic] program or microfilm, which is contained in" an extensive list of respondent's case files and data systems. FOIA Request Dated May 16, 1980, App. 20a–27a. Petitioner also requested similar information from the offices and personal areas of a number of respondent's officials.

Dissatisfied by the slow response to its request, petitioner filed suit in the United States District Court for the District of Columbia to compel release of the materials. In the District Court the parties agreed—as they continue to agree here—that § 6103 of the Internal Revenue Code is the sort of statute referred to by the FOIA in 5 U. S. C. § 552(b)(3) relating to matters that are "specifically exempted from disclosure by statute . . ."; thus, if § 6103 forbids the disclosure of material, it may not be produced in response to a request under the FOIA. Respondent argued that many of the records were protected as "returns" or "return information" under § 6103. Section 6103(a) provides that "[r]eturns and return information shall be confidential" and shall not be

disclosed "except as authorized by this title." A "return" is defined in § 6103(b)(1) as "any tax or information return, declaration of estimated tax, or claim for refund" including supporting schedules, attachments, and lists. Section 6103(b)(2) then supplies a more extensive definition of "return information," which includes:

> "[A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over-assessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . ."

After providing this detailed explanation of confidential "return information," § 6103(b)(2), as previously noted, continues: "but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." This last clause—the Haskell Amendment—was proposed as a floor amendment by Senator Haskell of Colorado and was adopted by a voice vote during the debate on the 1976 amendments to the Internal Revenue Code.

The District Court, after an *in camera* review of representative documents, held that respondent had correctly limited its search for and disclosure of materials requested by petitioner. 569 F. Supp. 1165 (DC 1983). Petitioner appealed that decision to the United States Court of Appeals for the District of Columbia Circuit. Following briefing and argument before a three-judge panel, the Court of Ap-

peals *sua sponte* undertook en banc review of the meaning of the Haskell Amendment and the modification it works upon § 6103(b)(2). The Court of Appeals concluded that, by using the words "in a form," Congress contemplated "not merely the deletion of an identifying name or symbol on a document that contains return information, but agency *reformulation* of the return information into a statistical study or some other composite product . . . ." 253 U. S. App. D. C. 85, 92, 792 F. 2d 153, 160 (1986) (emphasis in original). Thus, the court held, before respondent may produce documents otherwise protected, the Haskell Amendment requires that some modification have occurred in the form of the data contained in the documents. "[M]ere deletion of the taxpayer's name or other identifying data is not enough, since that would render the reformulation requirement entirely duplicative of the nonidentification requirement."[1] *Id.*, at 95, 792 F. 2d, at 163.

We granted certiorari, 479 U. S. 1063 (1987), to consider the scope of the Haskell Amendment and its relation to the

---

[1] The decision of the District of Columbia Circuit was thus in substantial agreement with the Seventh Circuit's opinion in *King* v. *IRS*, 688 F. 2d 488 (1982), and the Eleventh Circuit's determination in *Currie* v. *IRS*, 704 F. 2d 523 (1983). The Seventh Circuit concluded in *King* that § 6103 "protects from disclosure all nonamalgamated items listed in subsection (b)(2)(A), and that the Haskell Amendment provides only for the disclosure of statistical tabulations which are not associated with or do not identify particular taxpayers." 688 F. 2d, at 493. Similarly, in *Currie* the Eleventh Circuit held that the Haskell Amendment does not obligate the IRS, in a suit under the FOIA, to delete identifying material from documents and release what would otherwise be return information. 704 F. 2d, at 531–532.

The Ninth Circuit, however, reached a different result in *Long* v. *IRS*, 596 F. 2d 362 (1979), cert. denied, 446 U. S. 917 (1980). In *Long*, the court found that the Haskell Amendment removes from the category of protected return information any documents that do not identify a particular taxpayer once names, addresses, and similar details are deleted. See 596 F. 2d, at 367–369.

14

confidentiality provisions of §§ 6103(a) and (b).[2] Petitioner believes that the Haskell Amendment makes significantly greater inroads on the definition of "return information" than did the Court of Appeals. It makes two interrelated contentions: first, that the Haskell Amendment removes from the classification of "return information" all data which do not identify a particular taxpayer, and, second, that 5 U. S. C. § 552(b)—requiring that "[a]ny reasonably segregable portion" of a record be provided to a requester after deletion of the portions which are exempt—compels respondent to redact "return information" in its files where possible so as to bring that material within the terms of the Haskell Amendment. We reject both of these arguments.

We are told by the IRS that, as a practical matter, "return information" might include the report of an audit examination, internal IRS correspondence concerning a taxpayer's claim, or a notice of deficiency issued by the IRS proposing an increase in the taxpayer's assessment. Tr. of Oral Arg. 24–25. Petitioner asserts that the segregation requirement of the FOIA, § 552(b), directs respondent to remove the identifiers from such documents as these and that, once the materials are purged of such identifiers, they must be disclosed because they no longer constitute return information described in § 6103(b)(2).

We find no support for petitioner's arguments in either the language of § 6103 or in its legislative history. In addition to

---

[2] The original panel applied the en banc decision to the search and disclosure undertaken by respondent. See 253 U. S. App. D. C. 78, 792 F. 2d 146 (1986). Although many of the requested documents were protected as "return information," the panel found that the District Court had erred in accepting respondent's blanket assertion that all information responsive to petitioner's request in files unrelated to petitioner's California branch was exempt from disclosure. The panel remanded the case to District Court with instructions that respondent conduct a new search for information about the third parties identified by petitioner and justify any withholding of the information under the FOIA or § 6103. See id., at 84–85, 792 F. 2d, at 152–153.

the returns themselves, which are protected from disclosure by § 6103(b)(1), § 6103(b)(2) contains an elaborate description of the sorts of information related to returns that respondent is compelled to keep confidential. If the mere removal of identifying details from return information sufficed to put the information "in a form" envisioned by the Haskell Amendment, the remainder of the categories included in § 6103(b)(2) would often be irrelevant. The entire section could have been prefaced by the simple instruction to respondent that the elimination of identifiers would shift related tax data outside the realm of protected return information. Respondent would then first determine whether the information could be redacted so as not to identify a taxpayer; only if it could not would the extensive list of materials that constitute "return information" become pertinent. And if petitioner correctly interprets the intent of the Haskell Amendment, Congress' drafting was awkward in the extreme. The Amendment exempts "data *in a form*" (emphasis added) that cannot be associated with or otherwise identify a particular taxpayer. A much more natural phrasing would omit the confusing and unnecessary words "in a form" and refer simply to data.

Other provisions of § 6103 likewise belie petitioner's construction of the Haskell Amendment. Subsections (c) through (o) of § 6103 set forth various exceptions to the general rule that returns and return information are confidential and not to be disclosed. These subsections provide that in some circumstances, and with special safeguards, returns and return information can be made available to congressional committees, the President, state tax officials, and other federal agencies. The subsections also recognize that "return information" remains such even when it does not identify a particular taxpayer. Subsections 6103 (f)(1), (2), and (4), for example, allow the release of returns and return information to congressional committees, but distinguish between return information that identifies a taxpayer and return information that does not. Subsection (f) is thus inconsistent with peti-

tioner's theory that nonidentifying data cease to be return information at all.

The legislative history of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, of which the amendments to § 6103 are a part, also indicates that Congress did not intend the statute to allow the disclosure of otherwise confidential return information merely by the redaction of identifying details. One of the major purposes in revising § 6103 was to tighten the restrictions on the use of return information by entities other than respondent. See S. Rep. No. 94–938, p. 318 (1976) ("[R]eturns and return information should generally be treated as confidential and not subject to disclosure except in those limited situations delineated in the newly amended section 6103"). Petitioner's suggestion that the Haskell Amendment was intended to modify the restrictions of § 6103 by making all nonidentifying return information eligible for disclosure would mean that the Amendment was designed to undercut the legislation's primary purpose of limiting access to tax filings.

The circumstances under which the Haskell Amendment was adopted make us reluctant to credit it with this expansive purpose. During debate on the Senate floor, Senator Haskell proposed that § 6103(b)(2) be amended to make clear that return information "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." He then added this explanation of his proposal:

> "[T]he purpose of this amendment is to insure that statistical studies and other compilations of data now prepared by the Internal Revenue Service and disclosed by it to outside parties will continue to be subject to disclosure to the extent allowed under present law. Thus the Internal Revenue Service can continue to release for research purposes statistical studies and compilations of data, such as the tax model, which do not identify individual taxpayers.

"The definition of 'return information' was intended to neither enhance nor diminish access now obtainable under the Freedom of Information Act to statistical studies and compilations of data by the Internal Revenue Service. Thus, the addition by the Internal Revenue Service of easily deletable identifying information to the type of statistical study or compilation of data which, under its current practice, has [sic] been subject to disclosure, will not prevent disclosure of such study or compilation under the newly amended § 6103. In such an instance, the identifying information would be deleted and disclosure of the statistical study or compilation of data be made." 122 Cong. Rec. 24012 (1976).

After these remarks, the floor manager of the legislation, Senator Long, added that he would "be happy to take this amendment to conference. It might not be entirely necessary, but it might serve a good purpose." The Haskell Amendment was then passed by voice vote in the Senate and became part of the conference bill.

We find it difficult to believe that Congress in this manner adopted an amendment which would work such an alteration to the basic thrust of the draft bill amending § 6103. The Senate's purpose in revising § 6103 was, as we have noted, to impose greater restrictions on the disclosure of tax data; a change in the proposed draft permitting disclosure of all return information after deletion of material identifying a particular taxpayer would have, it seems to us, at a minimum engendered some debate in the Senate and resulted in a rollcall vote. More importantly, Senator Haskell's remarks clearly indicate that he did not mean to revise § 6103(b)(2) in this fashion. He refers only to statistical studies and compilations, and gives no intimation that his amendment would require respondent to remove identifying details from material as it exists in its files in order to comply with its requirement. All in all, we think this is a case where common sense suggests, by analogy to Sir Arthur Conan Doyle's "dog that

18

didn't bark," that an amendment having the effect petitioner ascribes to it would have been differently described by its sponsor, and not nearly as readily accepted by the floor manager of the bill.

We thus hold that, as with a return itself, removal of identification from return information would not deprive it of protection under § 6103(b).   Since such deletion would not make otherwise protected return information discloseable, respondent has no duty under the FOIA to undertake such redaction.   The judgment of the Court of Appeals is accordingly

*Affirmed.*

JUSTICES BRENNAN and SCALIA took no part in the consideration or decision of this case.