Daniel B. BERESFORD, John B. Beresford, and Donald W. Upward, Co–Personal Representatives of the Estate of Florence Booth Beresford, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 88 CV 2003 DT.

United States District Court, E.D. Michigan, S.D.

Nov. 21, 1988.

Kenneth R. Lango, Martha B. Goodloe, of Bodman, Longley & Dahling, Troy, Mich., for plaintiffs.

Thomas J. Clark, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION
AND ORDER

VIRGINIA M. MORGAN, United States Magistrate.

This matter is before the court on plaintiff's motion to compel discovery in this tax refund case involving valuation of shares owned by the plaintiff estate in the Evening News Association (ENA). As set forth in the parties' stipulation, the sole issue is whether 26 U.S.C. § 6103 prohibits the disclosure of the requested information.

ENA owned several newspapers, the largest of which was the Detroit News. After the pertinent time period in this lawsuit, ENA was acquired by Gannett Corporation. At issue in this lawsuit is the value of decedent's stock in ENA at the time of her death. The estate valued the shares at $66.00 per share, and the IRS valued the shares at $318.00. The plaintiff paid taxes based on the IRS's evaluation and now seeks a refund of those and other taxes.

Plaintiff's motion seeks to compel answers to its first set of interrogatories and request for production of documents. Specifically in dispute are interrogatories numbers 3, 9, 10, and 18 and document requests numbers 2, 5, and 6.

Section 6103 of the Internal Revenue Code prohibits disclosure of returns and return information except as permitted therein. The statute contemplates a two-step analysis. First, it must be determined that the material sought is covered as "return or return information" barred from disclosure by the statute. If it is within the statute's protection, then it must be determined whether any of the exemptions to the non-disclosure rule apply.

In this case, the government has refused to disclose internal IRS documents utilized in arriving at the $318.00 value per share used in determining the tax. These documents include information relating to other sales of ENA stock. The government has also refused to answer questions about or produce the portions of documents relating to third party taxpayers's treatment of the value of the stock and the IRS's treat-

ment of that valuation. In response to interrogatories and requests relating to the valuation figure of $318.00 per share, the government produced internal work papers with portions redacted to prevent disclosure under § 6103. Plaintiff also asked the government to produce information relied upon in making the following statements in its examination report:

1. "... virtually all of the cases arising in the late 1960's and early 1970's were being resolved at values in the range of $150–$200/share;" and

2. "... in the period of the early 1970's there were sales of small blocks of stock at $250.00/share, $300.00/share, and $325.00/share."

The government declined to produce *any* of the information upon which it relied on the grounds that § 6103 prevented such disclosure. Thus, information relied upon by the IRS in assessing tax liability has been withheld from the taxpayer, but is still available to the government and its attorney within the Department of Justice. See, § 6103(h)(3).

Section 6103 was passed as part of the Tax Reform Act of 1976 in response to congressional concerns that the privacy act did not adequately address the unique aspects of tax returns. S.Rep. 938, 94th Cong., 2nd Sess. 318 (Pt. I), reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 2897, 3747. Under prior regulations governing disclosure, tax return information was given to a significant number of executive and administrative agencies for both tax and non-tax matters. *Id.* at pp. 3746–3747. Congress was concerned that some tax returns of well known individuals were, upon request, sent to the White House. As the Congress noted, "Questions have been raised and substantial controversy created as to whether the present extent of actual and potential disclosure of return and return information to other Federal and State agencies for nontax purposes breaches a reasonable expectation of privacy on the part of the American citizen with respect to such information." *Id.* at 3747.

Thus, it is apparent that Congress enacted the statute as a shield to protect taxpay-

ers from improper disclosure by the government of the information they were required to provide to it by law. The government now seeks to use this statute as a sword to avoid telling the taxpayer seeking a refund the information utilized in determining the tax. The concern here is not with disclosure to other federal or state agencies or to the public at large. Permitting disclosure would not violate the purpose or spirit of the statute. Further, construing the statute, in this instance, to permit disclosure comports with fundamental principles of fairness as embodied in the fifth amendment's due process clause by avoiding the use of information against a party without that party having the opportunity to see that data.

At oral argument, government counsel conceded that the nondisclosed information could not be relied upon by the government at trial. Thus, the government would not receive any unfair advantage at trial. However, both counsel agreed that the taxpayer bears the burden to prove that the value of the stock and the resulting tax assessed was too high. The tax assessed is presumed correct until plaintiff shows otherwise. The assessed tax was calculated by relying on the valuation of $318.00 per share. While the government may not be able to introduce the return information at trial absent disclosure, it has already received the advantage of that information by using it to calculate the value of $318.00.

*Return and Return Information*

The statute protects from disclosure "return and return information." Return information is defined as follows:

(2). Return information.—The term "return information" means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other

data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in Section 6110(b)) which is not open to public inspection under section 6110, but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

26 U.S.C. § 6103(b)(2).

Plaintiff does not dispute that the information it seeks to recover is return information. Before the Supreme Court's decision in *Church of Scientology v. Internal Revenue Service.* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), there may have been some doubt as to the scope of material which constitutes return information. Previously, some courts had reasoned that if the data which identified the taxpayer were removed, it would no longer be return information. However, the Court held that merely removing the identifying information does not deprive it of the protections of § 6103. *Id.* 108 S.Ct. at 276. Therefore, even the material in a redacted form would be covered as "return information."

*Exceptions to the Non–Disclosure Rule*

The statute lists many exceptions in subsections (c) through (o ) from the general prohibition on disclosure. The parties have stipulated that the only exception which could apply is § 6103(h)(4)(B), which provides as follows:

(4) Disclosure in judicial and administrative tax proceedings.—A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding.

The parties were unable to cite any cases directly construing this provision. Most of the cases cited by the parties were either suits brought under the Freedom of Information Act which involved the scope of protection afforded by the Act, see, *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir. 1979); *Neufeld v. IRS,* 646 F.2d 661 (D.C. Cir.1981); *White v. IRS,* 707 F.2d 897 (6th Cir.1983); or were non-tax civil cases. *McSurely v. McAdams,* 502 F.Supp. 52 (D.D.C.1980); *Olsen v. Egger,* 594 F.Supp. 644 (S.D.N.Y.1984). Thus, these cases are of little value in construing the statutory provision at issue.

The government argues that the exception contained in (h)(4)(B) is not applicable because the information sought is not "directly" related to resolution of an issue in the proceeding. In making this argument, the government relies on legislative history which it claims shows that "directly related" requires (1) a close relationship between the person seeking disclosure and the third party taxpayer such as employer-employee, and (2) that the information directly relate to an issue in the proceeding. (Government's brief at p. 7) The government's reading of the statute inserts a second requirement of a relationship between the parties where no such requirement appears on the face of the statute.

The government's reading of the statute is unpersuasive for several reasons. First, as plaintiff points out, where the statute is unambiguous, a court should not resort to legislative history to interpret the statute but should interpret the plain language of the statute. See, *Burlington Northern Railroad v. Oklahoma Tax Comm.,* 481 U.S. 454, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987). Here, the statute is quite clear and it includes no requirement of a close relationship between the parties.

Second, the portion of the legislative history which precedes that relied upon by the government indicates that this history relates to disclosure to the Justice Department pursuant to (h)(3) and not to a private

individual under circumstances similar to those here. In this case, subsection (h)(4) is at issue and the legislative history cited by government counsel is only minimally helpful.

The plain language of the statute permits disclosure if the information sought is directly related to an issue in the lawsuit.[1] The IRS chose to rely on this information to determine value of the stock. The value of the stock is the issue in dispute. Thus, the non-disclosed information is directly related to an issue in the proceeding.

In *Mindell v. U.S.*, 693 F.Supp. 847 (C.D. Cal.1988), the IRS disclosed Mindell's tax returns to Goulding, who had prepared the tax return of a partnership in which Mindell was a limited partner. Goulding had been assessed penalties based on his status as "tax return preparer," and he brought suit to recover those penalties. *Id.* at 849. At his request, the government disclosed documents relating to the issue of whether he was a tax return preparer, including Mindell's Form 1040 and *all* attached schedules. *Id.* at 848, 849. Mindell sued for excessive disclosure. On motions for summary judgment, the court found that the information disclosed was "directly related" to an issue in the case, to wit: Goulding's status, and upheld the disclosure.

Here, information relied upon by the government in making its valuation is directly relevant to plaintiff's ability to challenge that valuation in this proceeding. Section 6103(h)(4)(B)'s plain language permits such disclosure. Further, such disclosure is consistent with the statute's scheme of permitting disclosure to only those persons who have a legitimate need to know and can be made under a protective order limiting the disclosure for the purposes of this litigation. Any use of the information at trial could be made in redacted form to code the identity of other taxpayers.

In accordance with this opinion, IT IS HEREBY ORDERED that defendant is to answer interrogatories 3, 9, 10, and 18, and document requests numbers 2, 5, and 6 by November 30, 1988. Defendant is to code all information which would directly identify the taxpayers such as names and social security numbers and retain the master code. If counsel for plaintiff deems that disclosure of the master code sheet is necessary, a motion can be made at that time.

IT IS FURTHER ORDERED that the information produced is to be used solely for the purposes of this lawsuit, and shall be destroyed after the judgment in this case becomes final. Counsel are to file affidavits attesting to this destruction within 30 days of the date the judgment becomes final.

---

**1.** 'Defendant has relied on the case of *Garity v. U.S.*, 46 A.F.T.R.2d 80–5143 (citing *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir.1979)) to argue that disclosure is inappropriate in this case. *Garity* involved a cross claim of conversion brought by Garity against two third-party defendants. That claim was not related to tax administration and subsection (h)(4) would not be applicable to the case. Thus, the court's analysis of that section was dicta.