BRANCH INTERNATIONAL SERVICES, INC., an Indiana Corporation, Charles L. Garavaglia, Mary Ann Garavaglia, B.I.S., Inc., a Michigan Corporation, and C & G Consultants, Inc., a Michigan Corporation, Plaintiffs,

v.

UNITED STATES of America and Internal Revenue Service, Defendants.

No. 94–75003.

United States District Court, E.D. Michigan, Southern Division.

Nov. 29, 1995.

Joseph Falcone, Southfield, Michigan, for plaintiffs.

William Woodard, Asst. U.S. Attorney, Detroit, Michigan, for defendants.

### OPINION AND ORDER REGARDING PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

## I.  INTRODUCTION

Plaintiffs brought this action pursuant to 5 U.S.C. § 702, the provision of the Administrative Procedures Act ("APA") that grants

the right to judicial review of an adverse agency action. Specifically, Plaintiffs seek this Court's review of a decision by the Detroit District Director of the Internal Revenue Service ("IRS") declining to authorize one of its special agents, James Budde, to appear at a deposition and produce documents sought by Plaintiffs.

Plaintiffs seek the deposition testimony of Special Agent Budde and certain documents in his possession in connection with a Michigan state court civil action they have commenced against various third parties. However, citing an ongoing criminal investigation of Plaintiffs by the IRS Criminal Investigation Division, the local IRS District Director found that the disclosures sought by Plaintiffs would "seriously impair Federal tax administration" within the meaning of 26 U.S.C. § 6103(c), and accordingly refused to permit those disclosures. On December 14, 1994, Plaintiffs filed the instant action, asking this Court to review the adverse decision of the IRS District Director.

Presently before the Court are Plaintiffs' and Defendants' cross-motions for summary judgment. Having reviewed all of the materials submitted by the parties, the Court is now prepared to rule on these motions. For the reasons stated below, the Court finds that the decision of the IRS District Director was neither arbitrary nor capricious, and accordingly grants Defendants' motion for summary judgment and denies Plaintiffs' cross-motion.

## II. *FACTUAL BACKGROUND*

The salient facts of this case are straightforward and not in dispute. The instant matter arises from the refusal by the IRS Detroit District Director to permit IRS Special Agent James Budde to comply with a subpoena *duces tecum* ordering him to appear at a deposition and produce various documents. This subpoena was issued in connection with a Michigan state court civil suit, *Branch Int'l Servs., Inc. v. Yarnell,* in which Plaintiffs allege that Leroy Yarnell

and his sons, Douglas and Timothy Yarnell, who were retained by Plaintiffs to provide various accounting services, wrongfully disclosed information and documents to the IRS and embezzled money from Plaintiffs.

Plaintiffs are currently under criminal investigation by the IRS Criminal Investigation Division for various federal tax offenses. This investigation began prior to the filing of Plaintiffs' state court suit against the Yarnells. Indeed, part of the basis for Plaintiffs' state court claims is that the Yarnells' allegedly fraudulent preparation of Plaintiffs' tax returns led to the IRS criminal investigation. As one of the two case agents in charge of that investigation, Special Agent Budde has interviewed various witnesses, including the Yarnells.[1]

The subpoena served upon Special Agent Budde by Plaintiffs seeks his appearance at a deposition and any notes or memoranda in his possession that document meetings or conversations between him and the Yarnells.[2] Pursuant to IRS regulations, Special Agent Budde forwarded the subpoena to the IRS Detroit District Office so that the District Director could determine whether to comply with the demand for testimony and documents. On December 6, 1994, Detroit District Director Arlene Kay decided not to authorize disclosure of the information and testimony sought by Plaintiffs. The following day, Assistant U.S. Attorney William Woodard sent a letter to Plaintiffs' counsel confirming the District Director's decision, and indicating that the decision was based on the District Director's determination that disclosure "would seriously impair federal tax administration."

Plaintiffs brought this action on December 14, 1994, seeking review of the IRS Detroit District Director's decision not to authorize Special Agent Budde to comply with the subpoena. Because the parties agree that no genuine issue of material fact stands in the way of this Court's determination whether the District Director's decision was proper,

---

1. The government notes that Leroy Yarnell has been granted immunity in exchange for his cooperation in the IRS investigation.

2. Plaintiffs also sought various other documents from the IRS, but this matter has been resolved between the parties.

the parties have filed cross-motions for summary judgment.

### III. *ARGUMENTS OF THE PARTIES*

Plaintiffs contend that the District Director's determination that compliance with the subpoena would "seriously impair federal tax administration" was wholly conclusory, and therefore was insufficient to enable this Court to meaningfully review the IRS decision. Plaintiffs assert that this Court should require the IRS to come forward with additional justification for its refusal to make Special Agent Budde available for a deposition in connection with their state court action. Absent such an affirmative showing of impairment by the IRS, Plaintiffs argue that the principle of full disclosure embodied in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, should govern their demand for testimony and documents. Moreover, Plaintiffs contend that the *de novo* standard of review called for in the FOIA should govern this Court's review of the IRS District Director's decision.

Defendants, however, maintain that the District Director's finding of impairment is sufficient in light of the disclosure sought and the ongoing IRS criminal investigation of Plaintiffs. Defendants argue that compliance with the subpoena obviously would impair the ongoing investigation, because Plaintiffs, the targets of the investigation, seek disclosure of all notes and memoranda of meetings and conversations between an investigating agent and three key individuals who have agreed to cooperate in that investigation. Accordingly, Defendants assert that the IRS need not make any additional showing to justify its decision. Finally, Defendants argue that the "arbitrary and capricious" standard specified in the APA, rather than the *de novo* standard called for in the FOIA, should control this Court's review of the District Director's decision.

### IV. *ANALYSIS*

#### A. *The Standard of Review Governing Consideration of the Parties' Cross-Motions for Summary Judgment.*

The applicable Federal Rule of Civil Procedure dictates that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties here agree that there is no genuine issue as to any material fact regarding the stated basis for the IRS District Director's decision declining to authorize Special Agent Budde to comply with Plaintiffs' subpoena. Accordingly, summary judgment is appropriate in this case.

#### B. *The "Arbitrary and Capricious" Standard Specified in the APA Governs the Court's Review of the IRS Decision.*

In ordering Special Agent Budde not to comply with Plaintiffs' subpoena, the IRS District Director invoked 26 U.S.C. § 6103(c). That section of the Internal Revenue Code (the "Code") provides:

> The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration.

26 U.S.C. § 6103(c). That section is part of a comprehensive set of provisions governing the confidentiality and disclosure of tax return information. *See* 26 U.S.C. § 6103. The Code broadly defines "return information" as

> a taxpayer's identity, the nature, source or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return

was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).

In this case, the District Director found that the subpoena called for the disclosure of "return information," and determined that this disclosure "would seriously impair Federal tax administration." In light of the broad statutory definition of "return information," and in light of case law broadly construing that term, *see, e.g., Chamberlain v. Kurtz,* 589 F.2d 827, 840 (5th Cir.1979) (finding that various documents, including intra-agency communications regarding the plaintiff's tax liability and reports by various IRS agents who worked on the tax fraud case against the plaintiff, constituted "return information" under § 6103), the parties here do not dispute that the disclosures sought by Plaintiffs qualify as "return information." Rather, the dispute here focuses on the District Director's determination that the disclosure "would seriously impair Federal tax administration," and thus is forbidden under 26 U.S.C. § 6103(c).

Plaintiffs devote a significant portion of their brief in support of their motion for summary judgment to a discussion of the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Because cases construing the confidentiality and disclosure provisions of the Code often arise in connection with FOIA requests for disclosure,[3] the Court agrees that this FOIA case law is relevant to the instant matter. However, the Court cannot agree with Plaintiffs' further contention that the "de novo" standard of review of agency decisions called for under the FOIA, *see* 5 U.S.C. § 552(a)(4)(B), carries over to this Court's review of the IRS decision at issue in this case. The IRS here appeals to 26 U.S.C. § 6103(c) as the basis for its refusal to comply with a subpoena. The fact that prior cases in which the IRS has invoked 26 U.S.C. § 6103 as a bar to disclosure typically have arisen in connection with FOIA requests does not alter the simple fact that this case did *not* so arise. Rather than filing a FOIA request, Plaintiffs here procured a subpoena in order to obtain information from the IRS.

■ Because no FOIA request is involved in this case, this Court need not address the widely disputed question whether the FOIA's *de novo* standard or a more deferential standard of review applies when *both* the FOIA and 26 U.S.C. § 6103 are involved in a case. *Compare Church of Scientology v. IRS,* 792 F.2d 146, 148–50 (D.C.Cir.1986), *aff'd* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987) (finding that the FOIA's *de novo* standard of review applies) *with Aronson v. IRS,* 973 F.2d 962, 965–67 (1st Cir.1992) (finding that a more deferential administrative law standard of review applies).[4] Given this crucial dis-

---

**3.** Under the FOIA, a case arrives in federal district court only after the plaintiff submits a FOIA request to a federal agency and that agency denies the request pursuant to one of nine statutory exemptions from disclosure. *See* 5 U.S.C. §§ 552(a)(4)(B), 552(b). One of those nine exemptions provides that an agency may deny a FOIA request on the ground that the requested materials are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Courts have found that 26 U.S.C. § 6103 is a statute that specifically exempts materials from disclosure within the meaning of the FOIA exemption. *See, e.g., King v. IRS,* 688 F.2d 488, 496 (7th Cir. 1982). Accordingly, IRS denials of FOIA requests for disclosure often cite § 6103 as justification.

**4.** Plaintiffs direct the Court's attention to one case that holds otherwise. In *Capri v. Murphy,*

No. B–80–571, 1985 WL 6364 (D.Conn.1985), the court found that the FOIA's *de novo* standard applied to its review of a government motion to modify a subpoena demanding documents and the deposition testimony of an IRS employee. Despite the absence of any FOIA request, the court conducted a *de novo* review of the government's assertion that release of the IRS employee's work papers would impair federal tax administration. This Court respectfully disagrees with that decision, and believes that the *Capri* court erroneously found itself constrained to choose between the two lines of cases considering the appropriate standard of review when *both* the FOIA and § 6103 are involved. The *Capri* court apparently overlooked the important fact that those two lines of cases arose from agency denials of FOIA requests.

tinction from prior cases, the Court concludes that the FOIA's *de novo* standard of review is simply inapplicable to this matter.[5]

Instead, the decision of the District Director not to comply with the subpoena constitutes an adverse "agency action" under the APA. *See* 5 U.S.C. § 702. Indeed, Plaintiffs themselves invoked the APA as the basis for this Court's jurisdiction. Consequently, while Plaintiffs are entitled to judicial review of the IRS decision, the APA provides that this Court may set aside that decision only if it is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706. The District Director's decision will be evaluated in light of this APA standard of review.

### C. The District Director's Refusal to Comply with the Subpoena Was Not Arbitrary or Capricious.

Turning to the substance of the agency decision in question, Plaintiffs object to the IRS's allegedly conclusory basis for deciding not to comply with the subpoena. The District Director stated her determination that compliance would "seriously impair federal tax administration," but did not provide further justification for this finding. Plaintiffs point to cases finding that agencies insufficiently justified their refusals to disclose information, and argue that IRS here, like the agencies in those prior cases, should be required to produce additional support for its decision.

In particular, Plaintiffs rely on *Osborn v. IRS*, 754 F.2d 195, 197 (6th Cir.1985), in which the court found that affidavits submitted in support of an IRS decision denying the plaintiffs' FOIA request failed to "provide adequate guidance" for the district court's review. Both before and during the litigation, the IRS was investigating the Osborns

to determine whether they were either civilly or criminal liable for understating their income. 754 F.2d at 196. The Osborns submitted a FOIA request to the IRS, seeking access to all agency records regarding civil or criminal audits of the Osborns' federal tax returns. 754 F.2d at 196. The IRS denial of that request cited § 6103, along with the FOIA exemptions covering intra-agency memoranda and records compiled for law enforcement purposes. 754 F.2d at 197 (citing 5 U.S.C. §§ 552(b)(5), 552(b)(7)). When the Osborns filed suit seeking judicial review of this denial, the IRS responded by submitting affidavits describing "in very general terms the contents of the disputed documents and the basis for the withholding." 754 F.2d at 197.

The court found these affidavits insufficient to permit judicial review of the agency's decision. 754 F.2d at 197. Specifically, the court found that "[t]he affiants' statements as to the disputed documents' contents and the specific bases for non-disclosure are made in conclusory terms and are of little or no assistance to a trial court in its decision-making." 754 F.2d at 197. The court then ordered the IRS to produce a so-called "Vaughn index"[6] of the withheld documents, so that the district court could effectively review the IRS decision on remand. 754 F.2d at 197–98. In support of its decision, the court quoted from an earlier Sixth Circuit opinion stating that agency preparation of Vaughn indices in FOIA cases comports with the government's burden of justifying non-production of materials under the FOIA. 754 F.2d at 197 (citing *Ingle v. Department of Justice*, 698 F.2d 259, 266 (6th Cir.1983)).

Plaintiffs contend that *Osborn* is entirely on point here, and that this Court according-

---

5. The Court similarly rejects Plaintiffs' even broader contention that 26 U.S.C. § 6103(c) *never* stands alone, but *only* operates as an exemption from disclosure pursuant to the FOIA. The Court sees no reason to graft either the provisions of the FOIA or its underlying principle of broad disclosure onto § 6103 simply because both statutes regulate the disclosure of government information.

6. A "Vaughn index" derives its name from the D.C. Circuit case that formulated a method by which courts can evaluate whether an agency is

properly withholding materials that are the subject of a FOIA request without having to review the actual materials at issue. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). A Vaughn index thus consists of a single document summarizing each withheld document, stating the FOIA exemption claimed for each document, and explaining why that exemption applies to that document. *See Osborn*, 754 F.2d at 196.

ly should order the IRS to produce a Vaughn index or some other document summarizing the substance of the withheld information and explaining why its disclosure would "seriously impair Federal tax administration." The Court disagrees, for two reasons. First, as discussed earlier, the presumption in favor of full disclosure that enters into a court's review of an agency denial of an FOIA request, and that therefore was an important consideration in *Osborn*, is not present in this case. Indeed, § 6103 creates exactly the *opposite* presumption, stating the "general rule" that "[r]eturns and return information *shall be confidential.*" 26 U.S.C. § 6103(a) (emphasis added); *see also Church of Scientology v. IRS*, 484 U.S. 9, 15, 108 S.Ct. 271, 275, 98 L.Ed.2d 228 (1987) (recognizing the presumption under § 6103 that "returns and return information are confidential and not to be disclosed").

■ Second, and more importantly, the Court sees nothing to be gained from a further IRS showing in this case. Cases arising from denials of FOIA requests typically involve myriad documents and various agency justifications for non-disclosure. For example, *Osborn* involved a FOIA request for *all* materials pertaining to IRS criminal or civil audits of the plaintiffs' tax returns. In contrast, the subpoena at issue here specifically calls for the deposition testimony of Special Agent Budde, one of two IRS agents in charge of the criminal investigation of Plaintiffs, as well as all documents memorializing conversations between Special Agent Budde and the Yarnells, the key cooperating witnesses in that investigation. This Court need not review a summary of the subpoenaed documents to surmise that they bear heavily on the investigation of Plaintiffs, and to accordingly determine that the District Director's decision to withhold those documents, based on her concern that the investigation would be impaired by disclosure, was not arbitrary or capricious. Moreover, it is unclear what sort of summary the IRS might produce to further justify its decision not to permit Special Agent Budde to appear at a deposition; obviously, no Vaughn index can be produced to cover any testimony Special Agent Budde might conceivably offer.

As Defendants point out, the Sixth Circuit case of *Dickerson v. Department of Justice*, 992 F.2d 1426 (6th Cir.1993), supports their contention that a more terse justification for a refusal to disclose agency information is sufficient in some instances, particularly when that information relates to an ongoing criminal investigation. In *Dickerson*, the plaintiff submitted a FOIA request seeking the release of records of an FBI investigation into the disappearance of Jimmy Hoffa. 992 F.2d at 1427. The government denied the request, citing 5 U.S.C. § 552(b)(7), a FOIA exemption that permits withholding of "records compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 992 F.2d at 1427. Based on affidavits from FBI officials and an *in camera* review of selected FBI documents, the district court had concluded that the investigation into Jimmy Hoffa's disappearance was ongoing, and that the FBI's compliance with the plaintiff's FOIA request could interfere with possible future criminal proceedings. 992 F.2d at 1427.

The Sixth Circuit affirmed the district court's decision. Of particular relevance to the instant case, the court held that "as a practical matter, it is often feasible for the courts to make 'generic determinations' about interference with enforcement proceedings." 992 F.2d at 1431. The court noted that in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), the Supreme Court had similarly concluded that the NLRB could appeal to the "enforcement proceedings" exemption from FOIA disclosure to justify its rule against prehearing disclosure of witness statements. Moreover, *Robbins Tire* held that federal courts may properly determine "that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" 437 U.S. at 236, 98 S.Ct. at 2324. Specifically, the Court noted that "[t]he most obvious risk of 'interference' with enforcement proceedings" raised under the facts of *Robbins Tire* was the threat of coercion or intimidation of key

**440**

witnesses. 437 U.S. at 239, 98 S.Ct. at 2325. Given *Robbins Tire*'s recognition of the particularly sensitive nature of ongoing investigations, and given the "obvious risks that public disclosure of ... active investigation files would entail," the *Dickerson* court rejected the plaintiff's contention that the FBI should be required to produce a Vaughn index or some similarly detailed summary in order to justify its denial of the plaintiff's FOIA request. 992 F.2d at 1430–33; *see also Vaughn v. United States*, 936 F.2d 862 (6th Cir.1991) (finding that affidavits submitted by the IRS were sufficient to justify its denial of the plaintiffs' FOIA request for all IRS documents relating to any criminal or civil income tax audits of the plaintiffs); *Barney v. IRS*, 618 F.2d 1268, 1271–73 (8th Cir.1980) (finding, in light of the plaintiffs' FOIA request for "disclosure of all investigatory records compiled on them by the IRS" pursuant to a criminal investigation, that IRS affidavits "describ[ing] the withheld documents in general terms" were "adequate to permit the determination that all disputed documents are exempt from disclosure").[7]

■ This Court finds *Dickerson*'s reasoning highly persuasive in the instant matter. The level of justification demanded from an agency when it refuses to disclose information surely must depend on the nature of the materials sought and their relation to any ongoing criminal investigations. The materials sought by Plaintiffs go to the very heart of the ongoing IRS criminal investigation of Plaintiffs. These materials include the statements of key witnesses against Plaintiff, and their disclosure consequently raises the risk of witness intimidation cited by the Supreme Court in *Robbins Tire*. Moreover, compelling Special Agent Budde to testify during the course of his criminal investigation certainly could interfere with subsequent investigation, and thus poses the clear threat of impairing federal tax administration within

the meaning of 26 U.S.C. § 6103(c). Finally, none of the cases cited by Plaintiffs finding agency justifications inadequate involve the type of disclosure demanded here: namely, a specific request for documents and testimony relating solely to the key witnesses in an ongoing criminal investigation.

Therefore, this Court concludes that the IRS District Director has adequately established that her decision was neither arbitrary, capricious, nor an abuse of discretion. The subpoena issued in connection with Plaintiffs' state court action seeks testimony and materials that are central to an ongoing IRS criminal investigation. The District Director reasonably determined that compliance with this subpoena would seriously impair federal tax administration. Accordingly, the Court grants Defendants' motion for summary judgment, and denies Plaintiffs' motion for summary judgment.

### V. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' motion for summary judgment be GRANTED, and that Plaintiffs' motion for summary judgment be DENIED.

---

7. Plaintiffs again cite *Capri v. Murphy*, No. B–80–571, 1985 WL 6364 (D.Conn. Jan. 4, 1985), as support for their contention that a more expansive showing is necessary to justify an agency's refusal to disclose materials. However, this Court finds two bases for distinguishing *Capri* from the instant matter. First, the subpoena in *Capri* did not seek materials relating to a criminal investigation, but rather sought documents

pertaining to an IRS employee's evaluation of the economic viability of a coal mining venture. 1985 WL 6364 at *1. Next, the *Capri* court explicitly recognized that "[t]his matter is distinguished from the cases upon which the government relies in each of which administrative or judicial proceedings involving the taxpayer were ongoing or contemplated." 1985 WL 6364 at *4.