UNITED STATES of America, Plaintiff,

v.

Thomas Frank COTRONEO, Defendant,

City of St. Paul; St. Paul Urban League; State of Minnesota, Petitioners.

Criminal No. 97–314(1).

United States District Court, D. Minnesota.

Jan. 28, 1999.

Susan Caroline Gretz, MN Atty General, St Paul, MN, for State of Minnesota.

Jeffrey Abdul Hassan, Hassan & Reed, Mpls, MN, for St. Paul Urban League.

Earl Paul Gray, Gray & Malacko, St Paul, MN, for Thomas Frank Cotroneo.

Henry Joseph Shea, III, U.S. Atty., Minneapolis, MN, for U.S.

## ORDER

DOTY, District Judge.

This matter is before the court on the petition of the State of Minnesota, the City of St. Paul, and the St. Paul Urban League for disclosure of grand jury information obtained during the criminal prosecution of Thomas Frank Cotroneo in the above-captioned case. Based on a review of the papers submitted by the parties, the court grants the petition.

## BACKGROUND

Thomas Frank Cotroneo ("Cotroneo") worked for the St. Paul Urban League ("the Urban League") from 1992 to 1995, performing a number of duties, including the administration of federal job training funds. On November 14, 1997 Cotroneo pleaded guilty to charges of extortion, theft from programs receiving federal funds, and filing a false personal tax return. In his plea agreement, Cotroneo admitted that he had received approximately $28,000 in kickbacks between 1992 and 1994 and $61,500 from false invoices submitted for payment from the City of St. Paul ("the City") between 1992 and 1995. The government ultimately arrived at a restitution figure of $92,483.

The federal funds taken by the defendant during his employment at the Urban League were the product of a grant from the City of St. Paul ("the City"), which had itself received the money from the State of Minnesota ("the State") as part of a program established to meet the Job Training Partnership Act of 1992. In accepting control of the funds, the Urban League agreed to indemnify the City.

The State has now expressed its intention to file a claim against the City demanding repayment of the funds taken by Cotroneo. In turn, the City has made a demand on the Urban League for indemnification concerning the misappropriated amount. The City has drafted a civil complaint to be filed against the Urban League in the event the matter cannot be quickly resolved. *See* Petitioners' Exh. 3. While the Urban League has insurance coverage protecting it against the dishonest acts of its employees, the insurer requires that an "itemization of funds" be included as part of the Urban League's proof of loss. The Urban League cannot, however, itemize the lost funds because it does not know which funds were identified by the FBI and IRS as having been taken by the defendant.

Caught between its legal obligations and the requirements of its insurance policy,

the Urban League, joined by the City and the State, brings this petition, pursuant to Rule of Criminal Procedure 6(e)(3)(C)(i), asking the court to order the government to disclose such grand jury information as would enable the Urban League to complete its itemization of funds. The government has objected.

## DISCUSSION

Rule 6(e)(3)(C)(i) provides that "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may ... be made ... when so directed by a court preliminarily or in connection with a judicial proceeding." The Supreme Court has established that a party must make two showings in order to obtain a disclosure of information pursuant to Rule 6(e)(3)(C)(i): (1) that the information is to be used for a purpose "related fairly directly to some identifiable litigation, pending or anticipated" and (2) that the party has particularized need for the information, "to avoid a possible injustice in another judicial proceeding." *United States v. Baggot*, 463 U.S. 476, 479–80, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). The court concludes that the Urban League has satisfied these criteria. The Urban League has clearly identified the anticipated litigation: a breach of contract and indemnification action that the City will file in state court in the event that the Urban League cannot obtain payment from its insurance company. The Urban League has also demonstrated that the question of whether it will obtain this insurance payment hinges on its ability to itemize the misappropriated funds. Finally, the Urban League has shown that the only way it can itemize these funds is by obtaining access to the material that formed the basis of the government's restitution figure. Thus, the Urban League has demonstrated that the requested information is both directly related and necessary to the anticipated litigation.

The government also contends that, even if the court were to allow disclosure under the Federal Rules, petitioners' access to the requested information is sepa-

rately barred by 26 U.S.C. § 6103(a) and (b)(2), which protects tax returns or "return information" from disclosure. However, petitioners point to the exception in the § 6103 confidentiality provisions regarding the modification of "return information": "But [the term 'return information'] does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." Petitioners argue that their request for disclosure falls within the ambit of this exception because they are "simply asking the government to identify which invoices and checks are 'false' and were used as part of the embezzlement scheme, and how it arrived at the $92,483 figure." Petitioner's Reply at 4. In other words, petitioners do not request the identity of any taxpayer or information as to which taxpayer is responsible for which illegal transaction; they simply want to know which transactions were illegal.

In *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), the Supreme Court narrowly interpreted the meaning of the above-quoted exception to 26 U.S.C. § 6103(b)(2), holding that the mere redaction of a taxpayer's name from tax return information does not meet the requirement that data be put in a form which does not directly or indirectly identify a particular taxpayer. However, in the same decision, the Court endorsed the determination of the circuit court below that the IRS may disclose information when "some modification ha[s] occurred in the form of the data contained in the documents," including " 'reformulation of the return information into a statistical study *or some other composite product.*' " *Id.* at 13, 108 S.Ct. 271 (quoting 792 F.2d 153, 160 (D.C.Cir.1986)) (emphasis added). Thus, the court concludes that if the government were to produce (1) an abstracted list of the invoices and checks that were used as a part of the embezzlement scheme and (2) an explanation of how the government arrived at the $92,483 figure, without naming individual taxpayers, this

disclosure would fall within the exception to § 6103(b)(2).[1]

## CONCLUSION

Accordingly, **IT IS HEREBY OR-DERED** that:

1. Within 10 days, petitioners shall submit to the U.S. Attorney's Office and the Internal Revenue Service a formal request for the disclosure of necessary grand jury information. The request should be drafted as specifically as possible, keeping in mind the government's confidentiality obligations under 26 U.S.C. §§ 6103(a) and (b)(2).

2. Within 20 days of the receipt of petitioners' request, the U.S. Attorney's Office and the Internal Revenue Service shall make a response consistent with the discussion contained in this order. The U.S. Attorney's Office and the Internal Revenue Service shall attest to the accuracy of whatever document it produces.

1. This is the approach that immediately suggests itself to the court. There may be other ways that the government could disclose the requested information to petitioners and stay within the parameters of 26 U.S.C. § 6103(a) and (b)(2).

Further, the government has indicated to the petitioners that it will disclose relevant return information if the petitioners obtain authorization from the relevant taxpayers. *See* 26 U.S.C. § 6103(a) and (b)(2). To settle another dispute between the parties: If petitioners decide to pursue this course they must obtain the consent of each taxpayer whose return material is implicated, not just Thomas Cotroneo's.