**LITTLE SIX, INC. and Shakopee Mde-wakanton Sioux (Dakota) Community, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5083.

United States Court of Appeals,
Federal Circuit.

Oct. 12, 2000.

Mary J. Streitz, Dorsey & Whitney, LLP, of Minneapolis, Minnesota, for plaintiffs-appellants. Of counsel on the brief was Kurt V. BlueDog, BlueDog, Olson & Small P.L.L.P., of Minneapolis, Minnesota.

Charles F. Marshall, Attorney, Tax Division, Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General; and David English Carmack, Attorney.

James M. Schoessler, Jacobson, Buffalo, Schoessler & Magnuson, Ltd., of St. Paul, Minnesota, for amici curiae, Lower Sioux Indian Community in Minnesota, et al.

ORDER

Circuit Judge DYK, with whom Circuit Judges NEWMAN and PLAGER join, dissents in a separate opinion.

A petition for rehearing en banc having been filed by the Appellee, and a response thereto having been invited by the Court and filed by the Appellants, and the matter having first been referred as a petition for rehearing to the panel that heard the appeal, and thereafter the petition for rehearing en banc and response having been referred to the circuit judges authorized to request a poll whether to rehear the appeal en banc, and a poll having been requested, taken, and failed,

IT IS ORDERED THAT:

(1) The petition for rehearing is denied.

(2) The petition for rehearing en banc is denied.

The mandate of the Court will issue on October 19, 2000.

DYK, Circuit Judge, with whom Circuit Judges NEWMAN and PLAGER join, dissenting from the Order denying the petition for rehearing en banc.

This case raises important questions concerning the use and effect of the "Indian canon" of construction in interpreting a significant federal statute. The panel decision conflicts with a recent decision of the United States Court of Appeals for the Tenth Circuit. *See Chickasaw Nation v. United States*, 208 F.3d 871 (10th Cir. 2000).

The statute at issue here states: "The provisions of the Internal Revenue Code of 1986 (including sections 1441, 3402(q), 6041, and 6050I, and chapter 35 of such Code) concerning the reporting and withholding of taxes with respect to the winnings from gaming or wagering operations shall apply to Indian gaming operations conducted pursuant to this chapter ... in the same manner as such provisions apply to State gaming and wagering operations." 25 U.S.C. § 2719(d)(1) (West Supp.2000). The panel held that the parenthetical reference to chapter 35—the chapter of the Internal Revenue Code that imposes a tax on wagers—exempts Indian pull-tab games from taxation. *See Little Six, Inc. v. United States*, 210 F.3d 1361, 1366 (Fed.Cir.2000). However, this construction cannot be reconciled with the other language of the statute, which applies only to provisions "concerning the reporting and withholding of taxes with respect to the winnings." Chapter 35 is not such a provision.

As I read the panel opinion, it finds a facial ambiguity in the statute because of

the conflict and resorts immediately to the Indian canon to resolve that ambiguity in favor of the tribe. However, in my view, the panel should not have invoked the Indian canon of construction so quickly. Instead, it should have utilized all available tools of statutory construction before declaring the statute ambiguous and resorting to a default rule designed for exceptional cases where, despite the court's best efforts, an ambiguity in the statute remains.

I agree that making sense of 25 U.S.C. § 2719(d) here is not an easy task. Despite the government's efforts, there is no way to reconcile § 2719(d)'s literal limitation to provisions of the Internal Revenue Code "concerning the reporting and withholding of taxes with respect to the winnings from gaming or wagering operations" with its parenthetical reference to chapter 35. I do not find persuasive the government's argument (adopted by the United States Court of Appeals for the Tenth Circuit) that the reference to chapter 35 was designed to incorporate § 4421's definitions of wagers and lotteries. See Chickasaw Nation, 208 F.3d at 883; 26 U.S.C. § 4421. For example, chapter 35 itself explicitly states that its definitions of wagers and lotteries apply only "for purposes of [chapter 35]," 26 U.S.C. § 4421, and its definitions are thus irrelevant for purposes of the other sections of the Code referenced by § 2719(d). I thus agree with the panel that confining § 2719(d)(1) to provisions "concerning the reporting and withholding of taxes" does in fact render the statute's reference to chapter 35 superfluous. See Little Six, Inc., 210 F.3d at 1365.

In my view, we are confronted with a situation in which it is impossible to give effect to all the language of the statute without rendering the statute self-contradictory. However, this does not create an ambiguity in the statute that justifies immediate resort to a canon designed to resolve ambiguities. Rather, a court under such circumstances should examine the statute's structure, purpose, and history in order to produce an interpretation that makes the statute coherent. The choice here is to accept the statute's limitation to provisions "concerning the reporting and withholding of taxes with respect to ... winnings," thereby rendering *superfluous* the parenthetical reference to chapter 35, or to accept that the reference to chapter 35 exempts Indian gaming from taxation, thereby *contradicting* the statute's limitation to provisions "concerning the reporting and withholding of taxes with respect to ... winnings."

While the general rule is that meaning should be afforded to all language in a statute, statutory language inadvertently included can be disregarded if it is found to be contrary to legislative intent. See United States v. Colon–Ortiz, 866 F.2d 6, 10 (1st Cir.1989); American Radio Relay League, Inc. v. FCC, 617 F.2d 875, 879 (D.C.Cir.1980); 2A Norman J. Singer, Statutes and Statutory Construction § 46.06, pp. 192–93 (6th ed.2000) (stating that "words and clauses which are present in a statute only through inadvertence can be disregarded if they are repugnant to what is found, on the basis of other indicia, to be the legislative intent"). Furthermore, the rule against superfluity has limited force when the alternative is to create even greater problems. In Church of Scientology v. IRS, 792 F.2d 153, 163 (D.C.Cir.1986) (en banc), aff'd 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), Judge (now Justice) Scalia noted that the court's interpretation of the Haskel Amendment, which caused two statutory provisions to become superfluous, was "nothing beside the textual and policy absurdities produced" by a contrary interpretation. That situation seems similar to the case here.

First, I cannot see how an erroneous parenthetical reference to a supposed example can trump the clear limiting language adjacent to the parenthetical. Moreover, as the government points out, it is unlikely that Congress would create a

significant tax exemption through a parenthetical reference, and it seems exceedingly unlikely that Congress would do so in a sentence which by its terms is restricted to reporting and withholding of taxes on winnings.

Second, a court should adopt a construction of the statute that makes it coherent. The panel's interpretation of the statute here may resolve this particular case, but it leaves the interpretation of the limitation ("provisions ... concerning the reporting and withholding of taxes with respect to ... winnings") unresolved. Is the effect of the panel decision somehow to modify the limitation to make it consistent with the specific examples? If so, what does the limitation now mean? Or does the panel's opinion eliminate the limitation because it is inconsistent with the specific examples? If so, not only would the panel be rendering the limitation superfluous, but also it would have the effect of making all provisions of the Internal Revenue Code "apply to Indian gaming operations ... in the same manner as such provisions apply to State gaming and wagering operations." There is no claim that Congress intended this result. It is far easier to make sense out of the statute if the inconsistent specific examples are read out of the statute because they conflict with the limitation.

Third, the legislative history does not support the result rendered by the panel. Early versions of the bill that ultimately became the Indian Gaming Regulatory Act ("IGRA") (of which § 2719(d) is a part) would have exempted tribes from the wagering tax. H.R.1920, passed by the House in 1986, provided: "Provisions of the Internal Revenue Code of 1954, as amended, concerning the *taxation* and the reporting and withholding of taxes pursuant to the operation of a gambling or wagering operation shall apply to the operations in accord with the Indian Gaming Regulatory Act the same as they apply to State operations." H.R.1920, 99th Cong. § 4 (1986) (emphasis added). The accom-

panying House report explicitly linked chapter 35 with the bill's reference to taxation. It noted that "Section 4 provides that relevant provisions of the Internal Revenue Code, such as section 3402(q) and chapter 35, 26 U.S.C., concerning taxation and the reporting and withholding of taxes relating to the operation of gaming activities shall apply to tribal gaming activities as they apply to State operated gaming activities." H.R. Rep. No. 99–488, at 13 (1986).

The Senate bill as originally proposed continued to include the reference to "taxation." S. 555, 100th Cong. § 20(D) (Feb. 19, 1987). However, in the version of the bill reported out of Committee and ultimately enacted, the reference to "taxation" was removed. The fact that the committee at the same time added a parenthetical including examples of both "reporting and withholding" provisions and "taxation" provisions hardly evidences a decision to have the specific taxation examples substitute for the general "taxation" exclusion. If the specific examples were a substitute for the general exclusions, how can the retention of the "reporting and withholding" language be explained? The legislative history here provides no clear guidance. The language of the provision has all the earmarks of a simple mistake in legislative drafting. The better explanation for the reference to chapter 35 is therefore that it was included inadvertently after Congress had decided to eliminate the reference to "taxation."

Fourth, I disagree with the panel's analysis of the purpose of § 2719(d). The panel seeks further support from the stated purposes of the IGRA, noting that the IGRA was intended "to promote tribal economic development and self-sufficiency." *Little Six, Inc.*, 210 F.3d at 1366; 25 U.S.C. § 2702. This policy strikes me as too open-ended to support the result here. The fact that a statute confers a set of benefits on tribes cannot mean that the statute should be extended beyond its

terms to grant additional benefits to the tribes.

I find that the statute's structure, purpose, and history all support the conclusion that the statute's reference to chapter 35 is superfluous. Thus, I think the panel here places more weight on the canon of construction regarding resolving ambiguities in favor of the Native Americans than that canon can bear. The Supreme Court has stated that the canon is not a license to adopt a "contorted construction" of a statute. *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986) (citing various cases noting that the canon is not license to disregard congressional intent). Nor can the canon properly be invoked to avoid the traditional analysis required for statutory construction. For example, in *Hagen v. Utah*, 510 U.S. 399, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994), the Supreme Court analyzed whether Congress had diminished a reservation. Although the Court recognized that it must "resolve any ambiguities in favor of the Indians," *id.* at 411, 114 S.Ct. 958, it did not shrink from applying the usual tools of statutory construction: the Court considered the language of the relevant Acts, their legislative history, contemporary historical evidence, and the Court's past precedents. *See id.* at 412–21, 114 S.Ct. 958. Despite the existence of the Indian canon, the Court concluded that the evidence demonstrated that the reservation had in fact been diminished by Congress, a result which led the dissent to complain that the Court was purporting to apply the Indian canon but "ignores [it] in practice." *Hagen*, 510 U.S. at 424, 114 S.Ct. 958 (Blackmun, J., dissenting). The panel's approach here appears to be inconsistent with the Supreme Court's approach in *Hagen*.

To be sure, fairness to our Native American population has been a quality in very short supply during much of our history. But we have not been assigned the task of redressing past wrongs by expanding the scope of federal statutes.

For the above stated reasons, I respectfully dissent from this Court's refusal to grant the United States' petition for rehearing en banc.