SHELL PETROLEUM, INC., and
Subsidiary Corporations,
Plaintiff,

v.

The UNITED STATES, Defendant,

No. 97–945 T.

United States Court of Federal Claims.

May 9, 2000.

Charles W. Hall, Houston, Texas, for plaintiff. Kenneth C. Gobetz, Suffern, New York; Charles R. Herpich, Jr., Sara Trapani, Nancy T. Bowen and Shawn R. O'Brien, Houston, Texas, of counsel.

Dennis M. Donohue, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant, with whom were George L. Squires; Sheryl B. Flum; Mildred L. Seidman, Chief; and Paula M. Junghans, Assistant Attorney General.

## OPINION

DAMICH, Judge.

Shell has filed a motion to compel against the United States in which it sought information about its case for a tax refund, information which happens to be in the tax returns of its competitors. Specifically, Shell is looking for information contained in certif-

icates for tax credit filed under Internal Revenue Code Section 43.[1] Shell believes that the information in section 43 certificates is relevant to its pending lawsuit for a tax credit under Section 29, a tax credit for oil produced from tar sands, because the certificates will provide information about how extensively the industry used particular production methods. The United States resists producing any information from section 43 certificates because Section 6103 generally prohibits disclosure of tax return information and none of the enumerated exceptions to Section 6103 permit the disclosure.

The Court grants the Plaintiff's motion to compel to the extent that the United States is ordered to produce unredacted section 43 certificates for an in camera inspection. An analysis of the facts in this case, starting with the complaint, shows that the Plaintiff has shown that its request may fall within Section 6103(h)(4)(B) and, thus, warrant further investigation by the Court.

## I.  Background

In its complaint, the Plaintiff alleges that it is entitled to a tax credit for tax years 1988 and 1989 based on Section 29. Section 29 provides that oil companies are eligible for an income tax credit of $3.00 for each barrel of "oil produced from … tar sands." Section 29(c)(1)(A).

The statute does not define "tar sands." After the decision in *Shell Petroleum, Inc. v. United .States*, 182 F.3d 212, 221 (3rd Cir. 1999), in which the Third Circuit adopted the definition of "tar sands" found in Federal Energy Agency[2] Ruling 1976–4, 10 C.F.R. ch.  II Rulings 371, 372 (1980) (hereinafter "FEA 1976–4"), the parties agreed that this definition should control in this case.

FEA 1976–4 states that "tar sands" are:

1.  Unless otherwise noted, all sections are to the Internal Revenue Code.

2.  The Federal Energy Agency was a predecessor to the Department of Energy. *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 214 n. 3 (3rd Cir.1999).

3.  During oral argument on the motion at hand, Shell represented that it produced section 43

The several rock types that contain an extremely viscous hydrocarbon which is not recoverable in its natural state by conventional oil well production methods including currently used enhanced recovery techniques.   The  hydrocarbon-bearing rocks are variously known as bitumen-rocks, oil impregnated rocks, oil sands and rock asphalt.

Among several defenses, the United States asserts that some or all of the Plaintiff's wells did not produce oil from tar sands. The Defendant contends that, instead of oil from tar sands, the Plaintiff's wells produced "crude oil," which, according to the Defendant, differs from "oil from tar sands."

The Defendant sought discovery that is relevant to whether the substance produced from the wells was "crude oil." In particular, the Defendant sought the production of certificates filed by the Plaintiff under Section 43. Section 43 permits a tax credit for the production of "crude oil." Section 43(c)(2)(A)(i). Since Section 43 was not effective until tax years beginning after December 31, 1990, Pub.L. 101–508, Section 11511(d), 104 Stat. 1388–485, a date that is after the tax years for which the Plaintiff seeks a refund, the Plaintiff objected to producing these certificates. This Court (Yock, J.) granted the Defendant's motion to compel the Plaintiff's production of the section 43 certificates in its possession.[3]

Later, the Defendant was permitted to inquire further into the section 43 certificates. The Defendant sought to depose those people who signed the section 43 certificates for the Plaintiff. The Court denied motions for protective order filed by the Plaintiff and the three named individuals and the depositions proceeded. An IRS official was present for these depositions.

certificates from many taxpayers. Shell understood that to comply with the Court's order, it was obligated to produce any section 43 certificates it possessed. Accordingly, Shell produced section 43 certificates from taxpayers that are not affiliated with it such as Arco, Amoco, British Petroleum Exploration, Marathon Oil Company, and Exxon. The production of these tax returns—assuming that Judge Yock's order required their production—is immaterial.

## II. Discovery Dispute

The Plaintiff also served interrogatories and accompanying requests for production to provide information about claims for tax credits under Section 43. The complete text of the interrogatory is set out in the footnote.[4] The Defendant neither answered this interrogatory nor produced any documents because of the prohibition in Section 6103.[5] The Plaintiff filed a motion to compel the Defendant to produce other section 43 certificates or, in the alternative, to preclude the Defendant from introducing any section 43 certificates, including its own, at trial. The Plaintiff argues that under these circumstances, Section 6103 does not prohibit the production of section 43 certificates from third parties.

## III. Analysis

### A. Text of Statute

Section 6103 begins with a fundamental statement that tax return information should not be produced. *Church of Scientology of California v. I.R.S.*, 484 U.S. 9, 10, 108 S.Ct. 271, 272, 98 L.Ed.2d 228 (1987). "GENERAL RULE.—Returns and return information shall be confidential." Section 6103(a). Section 6103, then, lists several exceptions.

Section 6103(h) permits disclosure for the purpose of tax administration. Within subsection (h) is point (4). This provides as follows:

DISCLOSURE IN JUDICIAL AND ADMINISTRATIVE TAX PROCEEDINGS.—A return or return information may be disclosed in a Federal or a State judicial or administrative proceeding pertaining to tax administration, but only—

(A) if the taxpayer is a party to the proceeding . . .

(B) if the treatment of an item reflected on such return is directly related to the resolution of the issue in the proceeding; [or]

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding.

Section 6103(h)(4). The more contentious issue is whether Shell's request falls within subpoint B.

The Plaintiff makes two separate arguments. First, the Plaintiff argues that the Defendant must produce section 43 certificates to it because the Defendant has wrongfully already used this information. According to this argument, the compelled disclosure would restore the Plaintiff to a level playing field. A second argument is that the information in the section 43 certificates is directly related to an issue in this case.

### B. Did the Defendant violate Section 6103 by using the Plaintiff's section 43 certificates?

■ The Defendant, represented by the Department of Justice, obtained the *Plaintiff's* section 43 certificates *from the Plaintiff*

---

4. Shell's Interrogatory 30 states:
Identify each and every taxpayer that has filed any claim for a tax credit under Section 43 of the Internal Revenue Code with respect to the producing formations at issue in this case either (a) for the use of a steam drive, steam soak, or cyclic steam injection technique or method, or (b) related to the production of oil from either a tar sand reservoir or a shale oil deposit, and with respect to each and every such claim state: (1) the period for the credit is(was) claimed; (2) the type of production method used; (3) the product(s) recovered from the project and whether the IRS characterizes the reservoir from which the product was produced as either a heavy oil reservoir, a ta[r] sand reservoir, or a shale oil deposit; (4) whether the IRS has allowed all or any part of any such claim and basis for any such allow-

ance; (5) the location of the project; and (6) whether any information pertaining to such project has been provided to any expert witnesses that will testify in this action on behalf of the United States, and, if so, identify the information provided. Plaintiff specifically requests that, if Section 6103 applies here, Defendant respond to the extent it can without disclosing tax return or tax return information, specifying the information omitted from its response.

5. The Defendant's Response to the Interrogatory was "OBJECTION: Defendant is prohibited by I.R.C. § 6103 from answering this interrogatory, since plaintiffs are requesting tax return information."

during discovery. This production request was the subject of a separate argument before Judge Yock, which resulted in an order that the Plaintiff produce section 43 certificates. The Plaintiff makes several arguments that start with the premise that the Defendant violated Section 6103, but these arguments completely miss the point that Section 6103 does not prohibit the disclosure of tax return information that comes from a source other than the IRS. *Baskin v. United States,* 135 F.3d 338, 342 (5th Cir.1998). Furthermore, a general argument of fairness cannot supersede the specific requirements of a statute. *See Greene v. United States,* 79 F.3d 1348, 1355 (2nd Cir.1996) (cautioning "against engrafting an additional exception to what is an already complex tax code.").

In one argument, Shell contends that the government violated Section 6103 by giving copies of its section 43 certificates to expert witnesses working for the government. The attorneys for the Department of Justice freely admit that they provided copies of the Plaintiff's section 43 certificates to the government's expert witnesses. But, these attorneys emphasize that they did not obtain section 43 certificates of other taxpayers from the IRS. Likewise, the IRS has not forwarded section 43 certificates of other taxpayers to the expert witnesses. Accordingly, the Plaintiff's argument that the Court must order the production of the section 43 certificates of other taxpayers to keep the Plaintiff on equal footing with the Defendant is rejected. The Plaintiff and the Department of Justice are already on equal footing because neither has access to the section 43 certificates of other taxpayers.

■ Further, Shell argues that the United States violated Section 6103 by involving Robert McCann, an IRS official who coordinates the government tax policy with regard to section 43 certificates. McCann, apparently, has extensive knowledge about the practices of other taxpayers, information gained by reviewing the section 43 certificates. He is participating in the litigation by attending depositions and by working with experts retained by the government. Shell argues that in his consultations, McCann must have implicitly passed along confiden-

tial information to the government's experts. Thus, to the Plaintiff, this case is analogous to *Beresford v. United States,* 123 F.R.D. 232 (E.D.Mich.1988), in which the court ordered the IRS to produce information of other taxpayers on which government experts relied.

Accepting the Plaintiff's argument regarding McCann would extend the statute beyond its words and require an unworkable practice at the IRS. Many individuals, some with extensive expertise, work at the IRS. This experience is gained, in part, by reviewing returns within a particular industry. If the court were to accept the Plaintiff's rule, to avoid "disclosing" tax return information of other taxpayers to an expert witness during litigation, the IRS could not assign the agent who is most familiar with the industry. Instead, the IRS would have to assign a person who is not familiar with any other returns, a result which is as impractical as it is absurd.

Section 6103 prohibits the disclosure of "return or return information." Notwithstanding this prohibition, the lead IRS agent may discuss the tax return of a party in litigation with experts retained for that litigation without violating Section 6103. IRS agents, whose past review of returns of another taxpayer informs their evaluation of the litigating taxpayer, may intelligently discuss the litigant's return. IRS agents are not required to unlearn what they learn from their experiences with other taxpayers. Accordingly, McCann's participation has not violated Section 6103.

The Plaintiff has failed to show that McCann's activities were improper in any way, let alone in a way that would be remedied by the production of section 43 certificates from other taxpayers.

Accordingly, the Court rejects the Plaintiff's first theory that the United States has violated Section 6103.

**C. Do the section 43 certificates of third parties "directly relate" to an issue in this case?**

The Plaintiff argues that Section 6103(h)(4)(B) permits the disclosure of this information because the section 43 certificates "directly relate" to resolving its case.

The Plaintiff contends that "directly relate" is the equivalent of the standard for civil discovery, that the requested information may lead to the discovery of admissible information. *See* R.C.F.C. 26 (setting forth scope of discovery).

Shell offers two reasons why section 43 certificates are "directly related" to its case. First, Shell argues that "fairness" requires it to have equal access to section 43 certificates. Since the government has section 43 certificates and intends to introduce those certificates into evidence, Shell should be permitted to have access to all section 43 certificates to rebut whatever argument the government makes at trial. Second, Shell argues that the section 43 certificates are relevant to its analysis of the technology necessary to qualify for tax credit under Section 29.

The Defendant, in contrast, argues that no information contained in the section 43 certificates of entities other than Shell has passed from the IRS to the Department of Justice or to the experts assisting the Department of Justice. Thus, there is no issue of "fairness." Further, Section 6103(h)(4)(B) does not authorize the disclosure in this case.

### 1. The Plaintiff's contended use of section 43 certificates as rebuttal.

■ According to Shell, the Defendant intends to introduce section 43 certificates at trial. Therefore, the Plaintiff must have similar information to rebut the Defendant's argument. But the Court understands that the only section 43 certificates that the Defendant will introduce are those certificates obtained from the Plaintiff. The Defendant will not be introducing section 43 certificates from other taxpayers. Thus, as a general principle the Plaintiff has enough information to rebut whatever way the Defendant uses

section 43 certificates because the Plaintiff has the same certificates.

Further, the Defendant has explained that the Plaintiff's section 43 certificates are relevant to showing that what was produced from the Plaintiff's wells was "crude oil," not "oil from tar sands." This issue depends on the qualities of the oil. Information from other taxpayers about other wells would not help the Plaintiff rebut the assertion that what came from its well was "oil from tar sands." Thus, the information is not "directly related" to the Plaintiff's rebuttal case.[6]

### 2. The Plaintiff's use of other taxpayers' section 43 certificates to prove its technology qualified for Section 29 tax credits.

■ In another argument, which was expressed most clearly during oral argument, Shell asserts that Section 29 and Section 43 are related because the same technology can qualify for a tax credit under both Section 29 and Section 43. Under FEA 1976–4, as interpreted by the United States, oil from tar sands must be produced using technology that was not widely available in 1980. The information in the section 43 certificates may show that cyclic steam or steam drive technology, at least in the form used by the Plaintiff, was not used by anyone else in the industry. This fact, if true, supports the inference that the technology is not widely available.

Shell's argument begins with an observation that both Section 29 and Section 43 authorize tax credits for the production of petroleum, but the two sections are not identical. Section 29, under the Defendant's interpretation, requires that the oil be pro-

---

**6.** The Court notes that the Defendant did not object to the interrogatory on the ground that the requested information was not relevant and not likely to lead to the discovery of admissible information. The Defendant's objection to the interrogatory would have been more complete if the Defendant had brought out this objection expressly.

Because Section 6103(h)(4)(B) and 6103(h)(4)(C) use the phrase "directly related," the Defendant's citation to this statute can be

understood as implicitly saying that the information is not "directly related," that is, not relevant. Although the better practice would be to make this argument explicitly, the Court has considered the Defendant's contention that the information is not relevant. It would be fundamentally unfair to order disclosure from other taxpayers—who are not parties—merely because the Defendant's attorney was not as precise as possible.

duced by technology that was not used in 1980.[7]

On the other hand, Section 43 authorizes a tax credit for using tertiary recovery methods. See Section 43(c)(2)(A)(i). "Tertiary recovery methods" are defined elsewhere. For this case, it is important to know that "cyclic steam" and "steam drive" are production methods that qualify as tertiary recovery methods. Shell has used cyclic steam and/or steam drive technology to produce the oil for which it seeks the tax credit in this case.

It is apparent that if a Venn diagram were drawn, the circle for the technology that qualifies for a Section 29 tax credit overlaps, in some part, with the technology that qualifies for a Section 43 tax credit. Some production methods involve both technology that was not used in 1980 and technology that is a tertiary recovery method.[8] Congress recognized this overlap because it provided an offset provision in Section 29 that prevented taxpayers from receiving both tax credits for the same project. Section 29(b)(5).

Based on this overlap, Shell contends that the section 43 certificates of other companies are "directly related" to Shell's claim for a refund under Section 29. Shell's best argument is based on two assumptions: (a) the section 43 certificates will show how other producers used cyclic steam and/or steam drive technologies; and (b) a comparison between how other producers used these methods and how Shell used these methods will show that no one else used Shell's method. From these two assumptions, Shell believes it will infer that since no else used Shell's method, (c) Shell's method was not widely available in 1980.

Shell's argument convincingly demonstrates that the section 43 certificates are "directly related" to proving its case. Under the interpretation of FEA 1976–4 offered by the United States, one element of Shell's

case is that the oil was produced with technology that was not "widely available." This element necessarily requires an analysis of the technology used by other companies, including Shell's competitors. The section 43 certificates may contain information that advances Shell's proof in showing that the technology was not "widely available."

Before turning the material over to Shell, the Court will review the section 43 certificates. It is not clear whether the section 43 certificates describe the production method in sufficient detail to assist the Plaintiff. For example, if the section 43 certificates were to state that the production method was "steam drive technology," then this bare description seems to preclude the Plaintiff from making any meaningful comparison.

Further, it may be possible for the Court to redact the section 43 certificates so that confidential information is not disclosed. Section 6103 prohibits the disclosure of "[r]eturns and return information." Section 6103(a). These terms are defined:

(1) Return.—The term "return" means any tax or information return, . . . provided for or permitted under, the provisions of this title which is filed with the Secretary, by on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

(2) Return information.—The term "return information" means—

(A) a taxpayer's identity, . . . or other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return . . ., but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

7. This interpretation is roughly how the Defendant interprets Section 29. The Plaintiff, however, interprets Section 29 differently. The Court's discussion of this interpretation is not intended to imply that the Defendant's interpretation is correct.

8. The Defendant proposes the following hypothetical example: the oil could be produced using cyclic steam or steam drive *in combination with* a different production method that either was novel in 1980 or was not combined with cyclic steam or steam drive in 1980. By having two different elements, one qualifying for a Section 43 tax credit and the other qualifying for a Section 29 tax credit, one production method could qualify for both credits.

Section 6103(b). The last clause in Section 6103(a)(2) is known as the Haskell Amendment. *Church of Scientology of California v. I.R.S.*, 484 U.S. at 12, 108 S.Ct. at 273.

Information about the production method could be separated from the remainder of the section 43 certificates. Since the Plaintiff is looking for information about the production method, a list of the various production methods could be compiled. If only this list, and no other information, were delivered to the Plaintiff, then Section 6103 would not be violated. The United States, in effect, would be producing information that is specifically excluded from the definition of "return information."[9]

## IV. Conclusion

Accordingly, the United States is ORDERED to produce for an in camera inspection the section 43 certifications that are responsive to the Plaintiff's discovery request. A separate order that governs the requirements of this production will follow.

Finally, the Court finds that the opposition by the United States was "substantially justified." Accordingly, the Plaintiff's request for attorneys' fees under R.C.F.C. 37(a)(4) is DENIED.

---

9. Without deciding the issue and subject to future argument, the Court notes that a list would seem to fit the requirement under the Haskell Act that the data be *"in a form."* *Church of Scientology of California v. I.R.S.*, 484 U.S. at 15, 108 S.Ct. at 275 (emphasis in original).