JADE TRADING, LLC, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 03–2164T.

United States Court of Federal Claims.

May 12, 2005.

David D. Aughtry, Chamberlain, Hrdlicka, White, Williams & Martin, Atlanta, Georgia,

and Linda S. Paine, Houston, Texas, for Plaintiffs.

Stuart J. Bassin, U.S. Department of Justice, Tax Division, Washington, D.C., for Defendant. Eileen J. O'Connor, Mildred L. Seidman, David Gustafson, William K. Drew, Matthew C. Hicks, and Michael S. Raum, U.S. Department of Justice, Tax Division, Of Counsel.

Ellis Reemer and Diana Erbsen, DLA Piper Rudnick Gray Cary, New York City, for BDO Seidman, LLP.

## ORDER AND MEMORANDUM OPINION DENYING BDO SEIDMAN, LLP'S MOTION TO AMEND OPINION TO CERTIFY FOR INTERLOCUTORY APPEAL

WILLIAMS, Judge.

On May 9, 2005, BDO Seidman, LLP, (BDO) a nonparty, filed a motion to certify an interlocutory appeal of this Court's Order denying BDO's motion to quash a subpoena served by Defendant seeking taxpayer information of BDO's nonparty clients.[1] Because BDO has not established that the issues presented meet the strict criteria for certification of an interlocutory appeal, BDO's motion is denied.

### *Background* [2]

Plaintiffs bring this action under Section 6226 of the Internal Revenue Code challenging the Internal Revenue Service's (IRS) adjustment of their tax liability and assessment of penalties for 1999. In the Final Partnership Administrative Adjustment (FPAA) at issue, the IRS disallowed capital losses approximating $40,000,000 and assessed penal-

ties of some $4,000,000, on the Ervin brothers, the real parties in interest.[3]

Defendant contends that Jade was formed for the purpose of creating artificial tax losses intended to eliminate federal taxes on unrelated capital gains received by the Ervins in 1999. Plaintiffs counter that Jade Trading was a bona fide partnership, formed for the express purpose of making money from trading, and not with a principal purpose of reducing substantially the partners' aggregate federal tax liability.

The Government asserts that after Plaintiffs received roughly $40,000,000 as a result of the sale of their cable business in 1999, they were approached by tax and financial service providers which presented various stratagems to "'shelter' those gains from federal income taxation." Defendant's Preliminary Statement of Contentions (Def.'s Cont.) at 4. The Government contends that after considering stratagems presented by financial services professionals, including BDO, the Ervins entered into the transactions at issue. These stratagems, the Government asserts, formed the basis of the Ervins' position that they had realized a capital loss of $40,000,000, which offset the capital gains realized from the sale of their cable business.

On September 30, 2004, Defendant served a subpoena on nonparty BDO, which Defendant characterizes as the promoter of the alleged tax shelter, seeking several categories of documents. On March 11, 2005, BDO moved to quash the subpoena with respect to one narrow category of documents—"all Form 1040 cover pages, Schedule D and Schedule K–1 for the years 1999–2000"—for 46 BDO clients who are not parties here. BDO asserted that the private tax return

---

1. The Order in question is reported at 2005 U.S. Claims LEXIS 110 (Apr. 22, 2005). BDO also asked the Court to stay production of the nonparty taxpayer information pending the Court's consideration of this motion and the conclusion of any interlocutory appeal.

2. This background is recounted in large part in the Order and Opinion at issue and is set forth here for ease of reference. *Jade Trading, LLC v. United States, No. 03–2164T,* 65 Fed.Cl. 188, 190, 2005 WL 950503, at *2, 2005 U.S. Claims LEXIS 110, at *1–2 (Apr. 22, 2005).

3. Plaintiffs in this action are Robert W. Ervin and Laura Kavanaugh Ervin on behalf of Ervin Capital LLC, which was a partner in Jade Trading. Ervin Capital LLC is an entity solely comprised of Robert Ervin and Laura Kavanaugh Ervin. Both of Robert Ervin's brothers, Gary Ervin and Tim Ervin, are also real parties in interest in this action because each has his own limited liability company which was a partner in Jade Trading, and each will be affected by any determination of tax liability rendered by this Court.

information of its nonparty clients is protected from disclosure under Section 6103 of the Internal Revenue Code, and that the subpoena was overly broad and demanded irrelevant documents. Defendant argued that it requires the private tax return information of the nonparties because it intends to offer "pattern evidence" to support its position that Plaintiffs' transaction did not "represent routine investment activity undertaken for economic profit." Def. Opp. at 1.

In denying BDO's motion to quash, the Court held that the subpoenaed material was relevant to the underlying action and that no privilege or statute prevented disclosure. The crux of the present motion concerns this Court's ruling in response to BDO's argument that 26 U.S.C. § 6103 barred the production by BDO of confidential third-party tax information to the Department of Justice (DOJ). First, BDO claimed that Section 6103 prohibits the IRS from disclosing confidential tax information to government agencies, and DOJ should not be permitted to do an "end run" around the statute and obtain confidential taxpayer information it could not get directly from the IRS by subpoenaing it from BDO.[4] Second, BDO argued that any third-party information produced to DOJ via the subpoena will have to be turned over to Plaintiffs under the discovery rules—in clear contravention of Section 6103,—which prohibits any officer or employee of the United States from disclosing return information obtained "in any manner." Finally, BDO asserted that Section 6103 bars the use and therefore the discovery of the confidential tax information in this proceeding because the statutory exception permitting use of such taxpayer information in judicial and administrative proceedings in Section 6103(h)(4) does not apply. The Court rejected each of these arguments and held:

> Because Section 6103 only prohibits disclosure of taxpayer return information as defined by Section 6103 and such definition only encompasses tax information "filed with," "received by, recorded by, prepared by, furnished to, or collected by" the Secretary of Treasury or the IRS,[ ] copies of

tax returns given to BDO by its clients do not fall within Section 6103's prohibition. Nor does this statute prohibit DOJ's intended use of this information in this litigation.

*Jade Trading, LLC v. United States*, No. 03–2164, 65 Fed.Cl. 188, 191, 2005 WL 950503, at *3, 2005 U.S. Claims LEXIS 110, at *11–12 (2005).

The Court originally ordered production of the subpoenaed documents by May 5, 2005. However, on May 2, 2005, BDO advised the Court of its intention to file the instant motion and therefore the Court extended that deadline until May 13, 2005. In addition, the Court directed BDO to notify its 46 clients of the Court's ruling and inform them that the Court would entertain their motions to intervene in this action for the limited purpose of objecting to disclosure of their taxpayer information, if such motions were filed by May 4, 2005. No BDO client has sought to intervene. The Court also authorized the parties and BDO to submit a proposed Protective Order covering these nonparty taxpayer documents, and the parties and BDO anticipate jointly requesting such an order shortly. Trial in this action is scheduled to commence on June 6, 2005, in Atlanta, GA, but Defendant has requested a continuance for an unspecified time due in part to the difficulties presented by the controversy over these nonparty documents.

### Discussion

■ Discovery orders are not final decisions and are therefore not generally appealable until final judgment. *See Connaught Labs, Inc. v. SmithKline Beecham P.L.C.*, 165 F.3d 1368, 1370 (Fed.Cir.1999); *Micro Motion, Inc. v. Exac Corp.*, 876 F.2d 1574, 1575–76 (Fed.Cir.1989) ("the nonappealability of orders requiring the production of evidence from witnesses has long been established"). This includes appeals from discovery orders aimed at nonparties to a litigation. *See Connaught*, 165 F.3d at 1370 ("This finality rule is also applicable where discovery orders are made upon witnesses who are not

---

**4.** BDO did not claim the taxpayer information is privileged, but it did assert its "fiduciary obligation to prevent the unwarranted and unautho-rized disclosure of the Unrelated Party Tax Returns." BDO's Reply at 3, n. 5.

parties to a suit"); *Micro Motion, Inc.,* 876 F.2d at 1576 (Fed.Cir.1989); *cf. Cobbledick v. United States,* 309 U.S. 323, 326, 60 S.Ct. 540, 84 L.Ed. 783 (1940) ("the requirement of finality will be enforced not only against a party to the litigation but against a witness who is a stranger to the main proceeding"). Notably, the Supreme Court has held on numerous occasions that an order denying a motion to quash, with limited exception, is not final and not appealable. *E.g., United States v. Nixon,* 418 U.S. 683, 690–91, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("In applying this principle [of the necessity of finality prior to appeal] to an order denying a motion to quash and requiring the production of evidence pursuant to a subpoena *duces tecum,* it has been repeatedly held that the order is not final and hence not appealable" (internal citations omitted)); *see also Micro Motion,* 876 F.2d at 1577 ("the Supreme Court has repeatedly held that an order denying a motion to quash, or an order compelling testimony or production of documents is not final and, hence, is not appealable regardless of how the matter is raised.") (citations omitted). The Federal Circuit in *Micro Motion* noted that generally an order refusing to quash a subpoena becomes appealable only after the subpoenaed entity fails to comply and is held in contempt, because the contempt citation becomes an appealable order. 876 F.2d at 1577 [5]; *accord, Connaught,* 165 F.3d at 1370, ("nonparties may secure review of a discovery order by refusing to comply with it and appealing a consequent contempt order, which is considered final").[6]

■ Despite this authority outlining the proper procedure for securing appeal of non-party discovery orders, BDO asks this Court to certify for interlocutory appeal its Order denying BDO's motion to quash. The statute

which sets forth the mechanism for this trial court to certify appeals of interlocutory orders, 28 U.S.C. § 1292(d)(2), provides in relevant part:

> when any judge of the United States Claims Court [United States Court of Federal Claims], in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2).

In substance, this statutory provision provides for a three-prong test for certification that is analogous to the provision which provides for certification of interlocutory appeals by the district courts. *See* 28 U.S.C. § 1292(b); *Marriott Int'l Resorts, L.P. v. United States,* 63 Fed.Cl. 144, 145 (2004); *American Mgmt. Sys., Inc. v. United States,* 57 Fed.Cl. 275, 276 (2003). These statutory provisions "'reserve interlocutory review for "exceptional" cases while generally retaining for the federal courts a firm final judgment rule.'" *Marriott,* 63 Fed.Cl. at 145, *citing Caterpillar Inc. v. Lewis,* 519 U.S. 61, 74, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (internal citations omitted); *see also Swint v. Chambers County Comm'n,* 514 U.S. 35, 46, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (stating that Congress accorded district courts "circumscribed authority to certify for immediate

---

**5.** The Federal Circuit explained:

We are mindful of the harshness inherent in requiring a witness to place [himself] in contempt to create a final appealable decision.... However, it is all too certain that the consequences of recognizing a *right* to appeal all orders refusing to quash a subpoena, even where such an order ends ancillary proceedings against a non-party, would be to 'constitute the courts of appeals as second-stage motion courts reviewing pretrial applications of all nonparty witnesses alleging some damage

because of the litigation.' ... Thus, the courts, with rare exceptions, have opted to require that the contempt route be followed.
*Micro Motion,* 876 F.2d at 1577–78.

**6.** The *Connaught* Court noted that the collateral order doctrine and a writ of mandamus could operate as exceptions to the finality rule but were inapplicable there since a refusal to comply with the order and subsequent contempt citation provided an effective review of the discovery order. 165 F.3d at 1370.

appeal interlocutory orders deemed pivotal and debatable").

*A Controlling Question of Law is Not Presented*

A question of law is controlling when it " 'materially affect[s] issues remaining to be decided in the trial court.' " *Marriott*, 63 Fed.Cl. at 145 (citing *Pikes Peak Family Housing, LLC v. United States*, 40 Fed.Cl. 673, 686 (1998)). The overarching issue to be decided in this tax case is whether the IRS properly disallowed the claimed losses. The parties have raised a number of subsidiary issues they claim are necessary to the resolution of this case: 1) whether Jade as a partnership carried on a business, financial operation or venture; 2) whether the IRS properly disregarded Jade's transactions under the step transaction, economic substance, or sham transaction theories; and 3) whether IRS' imposition of penalties was proper. Plaintiffs also urge the Court to invalidate Treas. Reg. 1.701–2 on grounds that it conflicts with judicial precedent, statute and regulation and is unconstitutionally vague.

Resolution of the Section 6103 question would not materially advance resolution of these tax issues, which depend on the facts and circumstances surrounding Plaintiffs' investment activities, their intentions and the bona fides of their transactions. Rather, the issue sought to be appealed, the Court's refusal to quash a nonparty subpoena on statutory grounds, covers a narrow spectrum of documents—nonparty taxpayer information—which Defendant seeks to use as "pattern evidence." Specifically, Defendant seeks taxpayer information of 46 BDO clients in an effort to demonstrate that the Ervins purchased an off-the-shelf tax shelter and executed it as other BDO purchasers did. Defendant argues that such pattern evidence would show that the Ervins' and nonparties' transactions were designed and executed to produce tax losses, not economic benefits. Thus, this pattern evidence appears to be secondary evidence intended by Defendant to bolster its argument that the Ervins' transactions lacked economic substance and business purpose, with the primary evidence being what the Ervins themselves intended and did.

Plaintiffs have filed a motion *in limine* seeking to exclude this nonparty taxpayer information at trial. The Court has not yet ruled on whether this "pattern evidence" is admissible. Thus, it is possible that this issue will be rendered moot when the Court addresses Plaintiffs' motion *in limine* or rules on objections to this pattern evidence at trial. A question of law that may be rendered moot by virtue of pre-trial or evidentiary rulings is not controlling.

An issue might be deemed serious and weigh in favor of certification if the trial court's decision, without an appeal, would have an immediate irreparable impact on nonparties. The Court here has taken precautions to protect the confidential taxpayer material at issue and to prevent prejudice to BDO's clients, including authorizing a protective order and giving each entity the opportunity to move to intervene for the purpose of raising additional particularized arguments objecting to disclosure. None of the BDO clients have sought to intervene, and counsel are finalizing a Protective Order covering these nonparty documents. As such, ordering production will not prejudice these nonparties, a factor which might otherwise have militated in favor of proceeding with certifying an interlocutory appeal.

In support of its argument that a controlling question of law is at issue, BDO contends:

> Clearly, where, as here, the Federal Circuit's decision on the Section 6103 issue will not only control the course of trial in this proceeding, but will even have broader applicability to all future tax administration proceedings in the Court of Federal Claims, the Section 6103 issue sought to be certified for interlocutory appeal is a controlling question of law.

BDO's Mot. at 8. BDO's prediction that the Federal Circuit might have an opportunity to "make law" on the Section 6103 issue for future litigants does not outweigh this Court's paramount consideration—whether the 6103 issue is controlling for the instant case.

*There is Not A Substantial Difference of Opinion on the Statutory Interpretation of "Return" or "Return Information"*

The second requirement for certifying an interlocutory appeal is that there be "a substantial ground for difference of opinion" on the disputed question. 28 U.S.C. § 1292(d)(2); *see Marriott*, 63 Fed.Cl. at 146. Noting that the statute only prohibits disclosure of a "return" or "return information," this Court interpreted those statutory definitions to conclude that Section 6103's prohibition applied exclusively to tax information "filed with the Secretary" or "received by, recorded by, prepared by, furnished to, or collected by, the Secretary"—not to taxpayer information voluntarily given by the taxpayer to a nongovernmental entity such as BDO. As is evidenced in the Opinion, the Court found no cases in any Circuit that read Section 6103 in the manner BDO advocated. In contrast, the Court cited opinions from the Fifth, Ninth and Eleventh Circuits which uniformly interpreted these statutory definitions in the same way as this Court. Although the Federal Circuit has not addressed the precise issue, there is no persuasive support for the proposition that there is a substantial difference of opinion on the definitional issue.[7]

Alternatively, BDO asserts that a substantial ground for difference of opinion can exist when the issue sought to be certified is one of first impression. This is not such a case. The question of whether Section 6103 prevents disclosure of tax return information that comes from a source other than the IRS has been squarely addressed by three Circuits and this Court, and these tribunals have uniformly answered this question in the negative. *See Jade Trading*, 2005 WL 950503, at *3, 65 Fed.Cl. at 191, 2005 U.S. Claims LEXIS 110, at *15–18; *see also Shell Petroleum, Inc. v. United States*, 46 Fed.Cl. 719, 722 (2000) ("The Plaintiff makes several arguments that start with the premise that the Defendant violated Section 6103, but these arguments completely miss the point that Section 6103 does not prohibit the disclosure of tax return information that comes from a source other than the IRS"). Thus, while this issue has never been addressed directly by the Federal Circuit, it is not one of first impression, and BDO points to no circuit which has given Section 6103 the expansive reading advocated here.

*An Interlocutory Appeal on the Eve of Trial Would Impede Ultimate Termination of this Litigation*

The third requirement for certification of an interlocutory appeal is whether the question "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2); *see Marriott*, 63 Fed.Cl. at 146. BDO argues that this requirement is met because "[t]he production of the Unrelated Party Tax Returns by BDO to Defendant may result in additional discovery and/or trial testimony depending on how the Court rules on Plaintiffs' motion *in limine*, which motion itself would only need to be considered if the Federal Circuit declines to hear the interlocutory appeal or sustains the position of the Court." *See* BDO's Mot. at 12. Certifying an interlocutory appeal would derail this case for no apparent gain since the issue BDO raises may well be rendered moot by pretrial or evidentiary rulings. Moreover, an interlocutory appeal even under BDO's

---

**7.** In a footnote, BDO points to an unpublished discovery Order in *Coltec Industries, Inc. v. United States*, No. 01–72T, Fed.Cl. slip op. (May 14, 2003) for support of its contention that a "substantial ground for a difference of opinion exists." *See* BDO's Mot. at 10 n. 7. This decision is not precedential for either the Circuit or this Court. Moreover, the Court in *Coltec* did not rely on the Section 6103 objection of a third party to prevent disclosure of nonparty tax return information. Rather, the *Coltec* Court concluded that Defendant had failed to meet its burden of "demonstrating why the [ ] requested documents are 'relevant' or 'likely to lead to admissible evidence' (Rule 26(b)(1)), or why the 'burden or expense of the proposed discovery

outweighs its likely benefit' (Rule 26(b)(2))." *Id.* at 8. Although BDO points out that the *Coltec* Court stated in dicta that "the Government offers no reason why the Court should issue an Order permitting discovery which Congress by statute has forbidden," that statement was made in the context of a different provision of Section 6103— Section 6103(h)(2)—which is not implicated here. That section does not define return or return information, but deals with exceptions permitting disclosure of such information to DOJ employees engaged in grand jury or court proceedings. Thus, the *Coltec* Court appears to have assumed "return" or "return information" was at issue and concluded that the (h)(2) exception authorizing disclosure did not apply.

proposed tack, would result in disruption and delay. BDO suggests that this court could certify the appeal, stay BDO's production of the nonparty taxpayer information pending resolution of the appeal, proceed to trial, and have the Court defer its decision until completion of the appeal process with respect to the Section 6103 issue. If necessary after the appeal, BDO would have the Court reconvene the trial. Understandably, Defendant vigorously objects to such a piecemeal trial, which would be costly, inefficient, and disruptive and result in unnecessary delay. On balance, the interests of a nonparty in maintaining confidential taxpayer information can be adequately protected by a Protective Order, while the interests of the parties to this litigation to proceed to trial in an efficient manner would be seriously compromised by BDO's suggested approach.

In sum, the Court will not violate the general rule of finality, which "embodies a congressional policy against piecemeal review, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *Nixon*, 418 U.S. at 690, 94 S.Ct. 3090. Because the Court finds that none of the criteria for certification of an interlocutory appeal have been met, the Court denies certification and need not consider BOD's request for a stay.

### Conclusion

1. BDO's motion to certify an interlocutory appeal is **DENIED**. BDO shall produce the subpoenaed documents no later than **May 16, 2005**, in accordance with this Court's April 22, 2005, Opinion.

2. BDO also argues that an appeal as of right, pursuant to Federal Rules of Appellate Procedure 4(a)(5), may be available under the collateral order doctrine and asks this Court for an extension of time to file a protective notice of appeal. Without addressing whether such an appeal could be properly taken, the Court denies BDO's request for an enlargement as unnecessary, given that BDO has cited no reason why it is unable to file its notice of appeal within the prescribed time under the Federal Rules of Appellate Procedure.

The CLERK of the Court is directed to serve a copy of this order on counsel for the subpoenaed entity, BDO:

Ellis L. Reemer
DLA PIPER RUDNICK GRAY CARY
1251 Avenue of the Americas
New York, N.Y. 10020